**David A. SCHOLL, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**QUALMED, INC., QualMed Plans for Health, and the United States Office of Personnel Management, Defendants.**

**No. CIV.A. 99–1744–JJF.**

United States District Court, E.D. Pennsylvania.

June 29, 2000.

Kenneth A. Jacobsen, Media, PA, for Plaintiff David A. Scholl.

Stephen A. Madva and Craig E. Ziegler, Montgomery McCracken Walker & Rhoads LLP, Philadelphia, PA, for Defendants QualMed, Inc. and QualMed Plans for Health.

David W. Ogden, Acting Assistant Attorney General, Susan K. Rudy, Assistant Branch Manager and David O. Buchholz, Trial Attorney, of the United States Department of Justice, Washington, DC, for Defendant United States Office of Personnel Management.

### *MEMORANDUM OPINION*

FARNAN, Chief Judge.[1]

Presently before the Court is Defendant United States Office of Personnel Management ("OPM's") Motion to Dismiss (D.I. 14) and Defendants QualMed, Inc. and QualMed Plans for Health's Motion to Dismiss (D.I. 11) in this putative class action. For the reasons set forth below, the Court will grant the applications.

## I. Background

Plaintiff David A. Scholl is the beneficiary of a health insurance plan provided by Defendants QualMed, Inc. and QualMed Plans for Health, Inc. (collectively "QualMed"). (D.I. 1, ¶ 11.) Under the plan, the Plaintiff is entitled to coverage for drugs approved by the Food and Drug Administration ("FDA") that have been prescribed by a licensed physician as medically necessary to treat a condition. (D.I. 1, ¶ 22.) Scholl has been diagnosed with erectile dysfunction by his physician. (D.I.

1, ¶ 12.) As part of the treatment, the physician prescribed the drug known as Viagra. (D.I. 1, ¶ 21.) Viagra is an FDA approved medication. (D.I. 1, ¶ 13.)

On May 3 and May 24, 1998, Scholl filled his Viagra prescriptions at local pharmacies. (D.I. 1, ¶ 21.) QualMed, however, denied coverage for the prescriptions. (D.I. 1, ¶ 21.) After Scholl inquired, QualMed informed him that it would make a coverage decision by "early summer" 1998. (D.I. 1, ¶ 27.) Scholl called again in early June, 1998, but QualMed still had not made a decision. (D.I. 1, ¶ 27.) Consequently, Scholl filed a written appeal of the denial of coverage on June 26, 1998. (D.I. 1, ¶ 27.) QualMed responded by letter dated August 3, 1998, denying coverage for the Viagra prescriptions. (D.I. 1, ¶ 27.)

Scholl appealed this decision to OPM in accordance with the administrative review procedures set forth in 5 C.F.R. § 890.105(a)(1). (D.I. 1, ¶ 28.) OPM determined that Viagra "is a covered benefit subject to contractual limitations and co-pays" and so informed Scholl by letter dated January 11, 1999. OPM's letter also told Scholl that OPM had asked QualMed to contact Scholl and resolve the dispute. (D.I. 1, ¶ 29.)

QualMed sent Scholl a letter, also dated January 11, 1999, indicating that it would retroactively apply a new Viagra policy, limiting coverage to four pills per month and limited reimbursement for past prescriptions. (D.I. 1, ¶ 30.) It is Scholl's contention that QualMed adopted this position without regard to the physician's determination as to the appropriate number of pills necessary to treat Scholl's condition. Furthermore, Scholl contends that this decision was limited only to him, thereby not providing any relief for members of the putative class.

Scholl responded by letter dated January 14, 1999 to QualMed (copied to OPM)

---

1. Honorable Joseph J. Farnan, Jr., Chief Judge, United States District Court for the

District of Delaware, sitting by designation.

stating that QualMed's proposed resolution was inadequate. Scholl did not receive a response. (D.I. 1, ¶ 31.) Scholl instituted this action on April 7, 1999.

## II. Standard of Review

■■■ The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Thus, when considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *See Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994). However, the court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost,* 1 F.3d at 183 (citation omitted). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. Discussion

### A. OPM's Motion to Dismiss

■■■ The Complaint asserts the subject matter jurisdiction of the Court under 28 U.S.C. § 1331 because the claim arises under the Federal Employee Health Benefits Act, 5 U.S.C. § 8901 et seq. ("FEHBA"). FEHBA was enacted by Congress to establish a comprehensive program to provide federal employees and retirees with subsidized health care benefits. *See Kobleur v. Group Hospitalization & Med. Services,* 954 F.2d 705, 709 (11th Cir.1992). Under FEHBA's provisions, OPM is given the responsibility of contracting with private carriers and, critically for the instant dispute, interpreting the plans to determine carrier liability in an individual case. *See id.* Congress delegated authority to OPM to promulgate regulations implementing FEHBA. *See* 5 U.S.C.A. § 8913 (West 1996).

■■■ OPM regulations require that a plaintiff exhaust administrative remedies as a predicate to bringing a FEHBA action. *See* 5 C.F.R. § 890.105; *Negron v. Patel,* 6 F.Supp.2d 366, 372 (E.D.Pa.1998). Recently, the Court of Appeals for the Third Circuit held that failure to exhaust contentions should be reviewed under the standard of Rule 12(b)(6) (failure to state a claim) and not Rule 12(b)(1) (lack of subject matter jurisdiction). *See Anjelino v. The New York Times Co.,* 200 F.3d 73, 87–88 (3d Cir.1999) The Third Circuit described the exhaustion requirement as akin to a statute of limitations defense, where, in certain circumstances, a court may look past the bar under the doctrine of equitable tolling. *See id.* at 87. The Court of Appeals further described the exhaustion requirement as a practical rule designed to provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record. *Id.*

■■■ In the instant case, the Court concludes that Scholl has failed to exhaust his administrative remedies. The essence of Scholl's Complaint is:

(1) his doctor issued a prescription for medication covered by his medical insurance;

(2) QualMed refused to reimburse him;

(3) Scholl appealed to QualMed in writing, who again refused;

(4) Scholl then appealed to OPM, who agreed with him that the medication was a covered benefit;

(5) QualMed informed Scholl that it would comply with the decision of OPM. However, it decided only to reimburse him for a certain number of pills, not, as Scholl phrases it, "full coverage;"

(6) Scholl wrote to QualMed and expressed his disagreement with QualMed's decision. This letter was copied to OPM.[2]

In the Court's view, the proper next step was not to bring an action in federal court. Rather, Scholl should have appealed to OPM about what he considered an improper, unilateral limitation on his prescription. In reaching this conclusion, the Court places particular emphasis on the key role played by OPM in the FEHBA regulatory scheme. OPM *is not* a rubber stamp for the insurance company. QualMed could not provide insurance under FEHBA without agreeing first that it would abide by OPM's interpretation of its insurance plans. *See* 5 U.S.C.A. § 8902(j) (West 1996) (stating "[e]ach contract under this chapter *shall require* the carrier to agree to pay for or provide a health service or supply in an individual case if [OPM] finds that the employee ... is entitled thereto under the terms of the contract.") (emphasis added). An appeal by Scholl to OPM at this stage could result in one of two possibilities: an affirmance of QualMed's limitation[3] or a determination that no such limitation applies under the terms of the insurance plan. This type of determination is not only a statutory duty of OPM, but it also is a question well within the agency's expertise. *See Anjelino,* 200 F.3d at 87.

Furthermore, resort to the administrative process is not futile. First, the Court observes that Scholl's initial recourse to OPM was successful and resulted in an immediate reversal of position by QualMed despite its earlier contention that Viagra was not a covered medication. Thus, Scholl was aware that the statutory and regulatory machinery was working as intended. He was unhappy with the limitation imposed by QualMed, but did not directly appeal the alleged improper limitation. Second, as discussed, QualMed

must abide by the determinations of OPM, an independent agency. An insurance carrier who disputed the decision of OPM could violate an express provision of FEHBA and jeopardize its future as a carrier. Accordingly, the Court concludes that the administrative process is not futile and is a necessary predicate to judicial relief.

Because the Court will dismiss this action for failure to exhaust administrative remedies, it will not address the standing issues raised by OPM in its Motion (D.I. 14 at 7.)

**B. QualMed Motion to Dismiss (D.I. 2.)**

In the Motion, Defendant's QualMed, Inc. and QualMed Plans for Health (collectively "QualMed") argue that Scholl's suit against them should be dismissed for three reasons.

First, QualMed contends that FEHBA regulations prohibit suit against the carrier. *See* 5 C.F.R. § 890.107. Second, QualMed argues that the only count asserted against it in the complaint is a state law breach of contract claim which is preempted under the terms of FEHBA. Finally, QualMed, Inc. argues separately that it is not a proper party to a breach of contract claim because it is not a party to the applicable contract. (D.I. 2 at 10.)

In response, Scholl contends that the FEHBA regulations barring suit against the carrier do not apply to the facts of this case, that his breach of contract claim is brought under federal common law and not the law of any state, and that dismissal of QualMed, Inc. would be premature. (D.I. 7 at 5–10.)

**1. FEHBA Regulations and Suit Against the Carrier**

Scholl argues that section 890.107 only prohibits suit against the carrier where the

**2.** The January 14, 1999 letter reflects Scholl's dissatisfaction with QualMed's resolution. Although copied to OPM, it contains no language indicating it was intended as an appeal to OPM of the QualMed decision.

**3.** Whereupon, Scholl could bring suit in federal court against OPM pursuant to 5 C.F.R. § 890.107(c).

OPM has affirmed the denial of benefits by the carrier. Scholl contends that OPM took his side in the dispute, but QualMed improperly flouted that decision by a unilateral limitation on the number of pills for which Scholl would receive reimbursement[4]. (D.I. 7 at 6.) Scholl makes the policy argument that adoption by the Court of QualMed's position would permit QualMed and all other FEHBA carriers to freely deny benefits expressly provided by the insurance contracts as well as ignore OPM determinations that a claimant was entitled to benefits, without fear of court action. (D.I. 11 at 3.)

The Court's view is that this argument does not recognize the pivotal role OPM plays in the FEHBA scheme. A carrier that "freely denies" express benefits and ignores OPM determinations would risk finding itself out of the federal health insurance business. As stated previously, a carrier that desires to provide health insurance under FEHBA *must* agree to be bound by the OPM's interpretations of their insurance plans. *See* 5 U.S.C. § 8902(j). In the Court's view, the regulatory language "[a] legal action to review final action by OPM involving such denial of health benefits must be brought against the OPM and not against the carrier" by implication reveals an understanding that in the event that OPM finds in favor of coverage, it will do battle on behalf of the claimant against a carrier[5] and resort to the courts should not be necessary.

■ However, the Court need not reach that question, because even if Scholl were correct that a claimant should be entitled to sue a rampaging carrier in view of a helpless OPM, that scenario is not the case here. As discussed, OPM affirmed that Viagra was a covered benefit. Scholl's lawsuit did not permit OPM the opportunity to pass on the extent of that coverage, and accordingly, the Court cannot agree that QualMed is illegally ignoring a final agency determination. Accordingly, the Court concludes that Scholl has failed to state a claim on which relief can be granted against the QualMed Defendants.

**2. Federal Common Law Breach of Contract and the Status of QualMed, Inc.**

Because the Court will dismiss the action for failure to exhaust, the Court does not reach the question of the claim for breach of contract under federal common law or the propriety of QualMed, Inc. as a party to the suit.

**IV. Conclusion**

Although the Court will grant the motions to dismiss with prejudice, the parties should understand that the dismissal does not preclude a future lawsuit on the same claim. Furthermore, the dismissal does not preclude litigation on any issue raised in this action other than the question of whether the Plaintiff exhausted his administrative remedies on the facts presented. The decision here is not an adjudication of the merits of the claim, but rather a refusal to hear it on the current record. *See* 18 James Wm. Moore, et al. *Moore's Federal Practice*, § 130[b][3] (3d ed.2000) (detailing collateral estoppel and res judicata effects of a dismissal for failure to comply with the prerequisites to a lawsuit).

An appropriate Order will be entered.

---

4. As discussed, the Court's view is that OPM decided that Viagra was a covered benefit, but has not yet addressed the question of the extent of the coverage. As the question of the extent of coverage is the heart of this action, OPM must be afforded the opportunity to render a final decision prior to litigation.

5. A battle it should win with ease given the provision of section 8902(j).