Marcella V. TURLEY, Plaintiff,

v.

**COVENTRY HEALTH CARE OF IOWA, INC., Defendant.**

No. 4:08–cv–00290.

United States District Court,
S.D. Iowa,
Central Division.

Dec. 12, 2008.

Harley C. Erbe, Erbe Law Firm, West Des Moines, IA, for Plaintiff.

Matthew Roger Eslick, Michael W. Thrall, Nyemaster Goode West Hansell & O'Brien PC, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court are two motions: Defendant's Motion for Summary Judgment (Clerk's No. 4), filed October 21, 2008, and Plaintiff's Motion for Leave to File Amended Complaint (Clerk's No. 8), filed November 21, 2008. Each party has filed a resistance to the other's motion. Defendant filed a Reply to Plaintiff's resistance on December 11, 2008. Clerk's No. 14. While the time for Plaintiff to file a reply to Defendant's Resistance to her Motion for Leave to Amend has not yet expired, the Court does not believe any argument made in such a reply would change the outcome of this matter. *See* L.R. 7(g) ("Ordinarily, reply briefs are unnecessary, and the court may elect to rule on a motion without waiting for a reply brief."). The matters are, therefore, fully submitted.

## I. FACTUAL BACKGROUND

Plaintiff, Marcella Turley ("Plaintiff"), is the family member of a participant in a plan (the "Plan") offered through the Federal Employees Health Benefits Program ("FEHBP") and administered by Defendant Coventry Health Care of Iowa, Inc. ("Coventry"). Stipulation ¶ 1. In May 2006, Plaintiff submitted a request to Coventry seeking preapproval of a gastric bypass procedure. *Id.* ¶ 2. Coventry notified Plaintiff on July 10, 2006 that it had denied her request because it had determined that the procedure was not medically necessary under the terms of the Plan. *Id.* ¶ 3. Coventry informed Plaintiff she had the right to ask for a reconsideration of its determination. *Id.* ¶ 4. Plaintiff timely submitted a request for reconsideration. *Id.* On January 8, 2007, Plaintiff proceeded with the gastric bypass surgery at her own expense. *Id.* ¶ 5. On January 30, 2007, Coventry denied Plaintiff's request for reconsideration, again concluding that the procedure was not medically necessary. *Id.* ¶ 5. Coventry informed Plaintiff that she had the right to appeal Coventry's final denial to the Office of Personnel Management ("OPM"). *Id.* ¶ 6. Plaintiff did not appeal Coventry's decision to OPM. *Id.* ¶ 7. Rather, she filed a lawsuit in the Iowa District Court for Polk County, Iowa on June 23, 2008. *Id.* ¶ 8; *see* Clerk's No. 2 (Pl.'s State Court Petition).

Plaintiff's Petition asserted a claim against Defendant pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Defendant removed the action to this Court on July 23, 2008. Clerk's No. 1. Defendant filed an Answer to Plaintiff's Petition on July 29, 2008. Clerk's No. 3.

## II. STANDARD OF REVIEW

### A. *Motion for Summary Judgment*

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with

such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.,* 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is " 'not to cut litigants off from their right of trial by jury if they really have issues to try,' " *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.,* 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.,* 523 F.2d 340, 347 (8th Cir.1975)).

The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994). The court does not weigh the evidence nor make credibility determinations; rather, the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B. *Motion to Amend Complaint*

The determination of whether to grant leave to amend a complaint after a responsive pleading has been filed rests in the "broad discretion" of the district court, though such leave "shall be freely given when justice so requires. . . ." *See Baptist Health v. Smith,* 477 F.3d 540, 544 (8th Cir.2007); Fed.R.Civ.P. 15(a). "There is no absolute right to amend and a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health,* 477 F.3d at 544 (citations omitted).

## III.  LAW AND ANALYSIS

The parties agree that Plaintiff's case cannot survive under ERISA because Plaintiff's Plan in this case was provided pursuant to the FEHBP.[1]  ERISA specifically does not apply "to any employee benefit plan if such plan is a governmental plan (as defined in section 1002(32) of this title)."[2]  29 U.S.C. § 1003(b)(1).  Accordingly, Defendant treats Plaintiff's Petition as having asserted an FEHBP claim in the first instance and argues that summary judgment must be granted as to that claim.[3]

### A.  *Is Plaintiff Required to Exhaust Administrative Remedies?*

Defendant first asserts that regulations applicable to FEHBP claims require an appeal to the OPM. Defendant argues that, because Plaintiff has never filed an appeal with the OPM, she has failed to exhaust her administrative remedies and cannot maintain the present action.  "The doctrine of exhaustion of administrative remedies provides that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  *Kobleur v. Group Hospitalization & Med. Servs., Inc.,* 954 F.2d 705, 709 (11th Cir.1992) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)).  The regulations applicable to the FEHBP provide:

> Each health benefits carrier resolves claims filed under the plan.  All health benefits claims must be submitted initially to the carrier of the covered individual's health benefits plan.  If the carrier denies a claim (or a portion of a claim), the covered individual may ask the carrier to reconsider its denial.  If the carrier affirms its denial or fails to respond as required by paragraph (c) of this section, the covered individual may ask OPM to review the claim.  A covered individual *must* exhaust both the carrier and OPM review processes specified in this section before seeking judicial review of the denied claim.

5 C.F.R. § 890.105(a)(1) (emphasis added); *see also* 5 C.F.R. § 890.105(e)(1)(i) (providing that a request to OPM for review of the carrier's denial of reconsideration must be made "[w]ithin 90 days after the date of the carrier's notice to the covered individual that the denial was affirmed").

■ In 1992, *Kobleur* became the first Court of Appeals decision to conclude that § 890.105 required an appeal to OPM before a lawsuit could be maintained, despite the fact that the version of the regulation in effect at the time did not contain an express exhaustion requirement.[4]  Since

---

1. In Plaintiff's Motion for Leave to Amend, Plaintiff states: "Plaintiff originally intended to assert an FEHBP claim; ERISA was cited because of counsel's drafting error." Clerk's No. 8 ¶ 2.

2. 29 U.S.C. § 1002(32) provides: "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing...."

3. To the extent that Plaintiff's Petition asserted any state law claims, Plaintiff concedes that all such claims are preempted.  Pl's Br.

at 2 ("Plaintiff agrees that state law claims would be preempted."); *see* 5 U.S.C. § 8902(m)(1) ("The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.").

4. While the relevant regulation in *Kobleur* did not expressly provide that exhaustion was a prerequisite to bringing a lawsuit, as it does now, it did still employ the word "may," providing: "If the plan affirms its denial or

*Kobleur* was decided, the agency regulations have been changed to include an express exhaustion requirement. *See* 5 C.F.R. § 890.105 ("A covered individual *must* exhaust both the carrier and OPM review processes specified in this section before seeking judicial review of the denied claim.") (emphasis added); 5 C.F.R. § 890.107(d) (providing that a legal action to review denials of health benefits must be brought against OPM, not against the carrier, and "[m]ay *not* be brought prior to exhaustion of the administrative remedies provided in § 890.105") (emphasis added). Moreover, virtually every court that has considered the question of whether appeal to OPM is required before bringing a lawsuit have concluded that it is. *See, e.g., Botsford v. Blue Cross & Blue Shield,* 314 F.3d 390, 397 (9th Cir.2002) ("OPM has created a detailed administrative enforcement scheme for resolving disputes over FEHBA benefits. Pursuant to the regulatory scheme, a beneficiary must first submit a dispute over benefits to the carrier and then to OPM before seeking judicial review."); *Bryan v. Office of Pers. Mgmt.,* 165 F.3d 1315, 1318 (10th Cir.1999) (stating that a covered individual may seek judicial review "only after exhausting" the administrative remedies provided in § 890.105); *Nesseim v. Mail Handlers Benefit Plan,* 995 F.2d 804, 806–07 (8th Cir.1993) ("[E]ach claimant whose claim

has been denied by a contracting carrier must appeal to the OPM before proceeding with a civil suit."); *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 593 (2d Cir.1993) (adopting the Kobleur court's reasoning in finding appeal to OPM mandatory); *Scholl v. QualMed, Inc.,* 103 F.Supp.2d 850, 853 (E.D.Pa.2000) ("OPM regulations require that a plaintiff exhaust administrative remedies as a predicate to bringing a FEHBA action."); *In re Lyme-Care, Inc.,* 301 B.R. 662, 670 (D.N.J.2003) (finding exhaustion mandatory); *Mondor v. Blue Cross & Blue Shield of Texas,* 895 F.Supp. 142, 144 (S.D.Tex.1995) ("Exhaustion of [the § 890.105] administrative procedure prior to filing suit is mandatory."); *Lieberman v. Nat'l Postal Mail Handlers Union,* 819 F.Supp. 344, 348 (S.D.N.Y. 1993) (finding a lack of jurisdiction where plaintiff had failed to exhaust administrative remedies by appealing to OPM). This Court agrees with others that have considered the issue and finds that the plain language of the regulations requires exhaustion.

### B. *Is the Exhaustion Requirement Excused?*

Plaintiff contends that, when an exhaustion requirement is created by agency regulations, as opposed to by statute, a district court may decide whether exhaustion is required. Pl.'s Br. at 2. Plaintiff is

---

fails to respond as required ..., the enrollee may ask OPM to review the claim." *Id.* at 709. Kobleur argued that the use of the permissive term "may" meant that OPM review was not actually required before filing a lawsuit. *Id.* at 709–10. The *Kobleur* court rejected this argument, specifically noting that OPM had issued the following statement regarding its intent with regard to exhaustion:

In the employee benefits area, OPM has traditionally argued for dismissal of court cases when the individual has failed to exhaust administrative remedies. The purpose of OPM's disputed claims review procedures is to assist enrollees in avoiding the

costs and time delays associated with legal proceedings. Consequently, we do not favor a regulation calling for review by the courts before all administrative remedies have been exhausted.

*Id.* at 710 (quoting 51 Fed. Reg. 18563 (1986)). Relying on a Supreme Court mandate that reviewing courts "should give effect to the agency's interpretation so long as it is 'reasonable,'" the *Kobleur* court concluded that "the regulatory scheme of the FEHBA creates an exhaustion requirement." *Id.* at 710–11 (quoting *Martin v. OSHRC,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)).

correct that in an appropriate case, the Court may excuse a party's failure to exhaust administrative remedies. For example, "[a] party may be excused from exhausting administrative remedies if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative procedures would be futile, or if the issues to be decided are primarily legal rather than factual." *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins.*, 440 F.3d 992, 1000 (8th Cir.2006).

In this case, Plaintiff argues that exhaustion should be excused because Plaintiff could not reasonably have been expected to understand that appeal to OPM was mandatory rather than optional prior to filing suit. Specifically, Plaintiff argues that she was not properly notified of the requirement to appeal to OPM because: 1) Coventry's final denial letter dated January 30, 2007 told Plaintiff merely: "If you do not agree with our decision, you *may* ask OPM to review it."; 2) the letter did not say that Plaintiff *must* appeal to preserve her judicial review rights; and 3) the letter then became confusing because it informed Plaintiff that "[f]urther information on your right to appeal to OPM can be found in your *Federal Employees Health Benefits Program Plan Brochure, pages 85–86*," but those pages actually dealt with additional benefits programs available to federal employees to "complement FEHB benefits." Pl.'s Br. at 3. Plaintiff further asserts that even if Coventry had properly referred her to the "Disputed Claims Process" portion of her Plan brochure, she still would not have received adequate notice because that document contains the same permissive language as Coventry's letter: "If you do not agree with our decision, you *may* ask OPM to review it." *Id.*

Plaintiff admits in her affidavit that she "read Section 9 ("Disputed Claims Process") of the 2007 Coventry FEHB Brochure." Clerk's No. 7–3 at 7. Section 9 of the Plan brochure provides:

Follow this Federal Employees Health Benefits Program disputed claims process if you disagree with our decision on your claim or request for services, drugs, or supplies—including a request for preauthorization/prior approval. . . .

1. Ask us in writing to reconsider our initial decision. You must [write within 6 months, send the request to a specific address, include a statement of why the decision is alleged to be wrong, and provide supporting documentation].

2. We have 30 days from the date we receive your request to: [pay the claim, write to the participant and maintain the denial, or ask for more information]. If we ask your provider, we will send you a copy of our request—go to step 3.

3. You or your provider must send the information so that we receive it within 60 days of our request. . . . [After receiving the information a decision will be rendered within a specified time frame]. We will write to you with our decision.

4. If you do not agree with our decision, you may ask OPM to review it. You must write to OPM within

* 90 days after the date of our letter upholding our initial decision; or

* 120 days after you first wrote to us—if we did not answer that request in some way within 30 days; or

* 120 days after we asked for additional information.

Write to OPM at [address]. Send OPM the following information: [a statement of why the decision was wrong, documentation, copies of all letters sent to Coventry, copies of all letter from Coventry to the partici-

pant, and daytime telephone number].... 

5. OPM will review your disputed claim request and will use the information it collects from you and us to decide whether our decision is correct. OPM will send you a final decision within 60 days. There are no other administrative appeals.

If you do not agree with OPM's decision, your only recourse is to sue. If you decide to sue, you must file the suit against OPM in Federal court by December 31 of the third year after the year in which you received the disputed services, drugs, or supplies or from the year in which you were denied precertification or prior approval. This is the only deadline that may not be extended.

OPM may disclose the information it collects during the review process to support their disputed claim decision. This information will become part of the court record.

*You may not sue until you have completed the disputed claims process.* Further, Federal law governs your lawsuit, benefits, and payment of benefits. The Federal court *will base its review on the record that was before OPM when OPM decided to uphold or overturn our decision.* You may recover only the amount of benefits in dispute....

Clerk's No. 7(3) at 3–4 (emphasis added).

■ While Plaintiff concedes that Section 9 contains the emphasized language above, she asserts that the language is "vague" because it does not specifically say that a lawsuit cannot be filed unless the matter has been appealed to OPM. Plaintiff's argument is unpersuasive. The emphasized language is explicit in requiring that the *entire* Disputed Claims Process must be followed before a lawsuit can be filed. And, if it were not already apparent, the notification that a reviewing court "will base its review on the record that was before OPM" only makes it more clear that an appeal to OPM is required before judicial review is permitted. Indeed, Plaintiff's argument in this regard has been repeatedly rejected by courts that have considered it. For example, in *Bateman v. Blue Cross & Blue Shield*, a case cited by Plaintiff, an Alabama district court held:

> [T]he Batemans draw significance from the fact that section 890.105(c) provides that a claimant "may" seek review by OPM. They argue that exhaustion is not required because the use of the permissive term reflects an intent to allow the claimant either to seek OPM review or file court proceedings. This argument is meritless. The word in its context means just what it says: the claimant may seek OPM review, or not seek review and accept the carrier's decision; the choice is the claimant's. The word, simple and unembellished, fits snugly into the OPM administrative scheme; and advances the judicial policies behind the exhaustion doctrine.

*Bateman*, 579 F.Supp. 265, 267–68 (M.D.Ala.1984). Even more compelling is the fact that the Eighth Circuit has determined in the ERISA context that administrative exhaustion requirements are not waived by the use of language such as "may request a review": "[W]hether it is a denial letter or a plan document that uses permissive language to describe a review procedure, 'claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court.'" *Wert v. Liberty Life Assur. Co. of Boston, Inc.*, 447 F.3d 1060, 1065 (8th Cir.2006) (quoting *Kinkead v. S.W. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 69 (8th Cir.1997)) ("In no case has our

court excused a failure to exhaust contractual remedies based on the fact that plan language described a review procedure as permissive rather than mandatory."); *see also Greifenberger v. Hartford Life Ins. Co.*, 131 Fed.Appx. 756, 758 (2d Cir.2005) (rejecting a claim that the word "may" made an appeal optional rather than mandatory: "[T]he inclusion of the term 'may' in Hartford's policy cannot excuse Greifenberger from the duty to exhaust administrative review...."). Under Eighth Circuit precedent, the Court must reject Plaintiff's argument that her failure to exhaust administrative remedies is excused.[5] Accordingly, summary judgment is properly granted in favor of Defendant for Plaintiff's unexcused failure to exhaust.

### C. *Other Considerations*

■ The Court further notes that Plaintiff's claim against Coventry is improper pursuant to 5 C.F.R. § 890.107(c), which clearly provides that "a legal action to review final action by OPM involving [ ] denial of health care benefits must be brought against OPM and not against the carrier or carrier's subcontractors." Further, the Court's authority to remedy a denial of FEHBP health care benefits is limited to "a court order *directing OPM* to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c) (emphasis added); *see also Botsford*, 314 F.3d at 397 ("Moreover, beneficiaries may only name OPM, not the carrier, in a suit...."); *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Texas, Inc.*, 481

F.3d 265, 277 n. 58 (finding that § 890.107(c) "expressly exempts the carrier from suit").

Plaintiff "disagrees that OPM, not Defendant is the proper party," but goes on to state:

Plaintiff is unclear how that would work if the Court excuses exhaustion in this matter. That would mean that there was [sic] and will not be OPM review of Defendant's benefits denial. OPM is only a proper party in "[a] legal action to review final action by OPM involving denial of health benefits [ ]. This is not such an action, so OPM would not be a proper party.

Pl.'s Br. at 6. Plaintiff's argument is unconvincing. Plaintiff offers no authority to contradict the express requirement of § 890.107 that OPM is the only proper party to the suit or that the Court is only authorized to provide a remedy in the form of an order directed at OPM. Accordingly, Coventry is not a proper party to this lawsuit and summary judgment is proper.

### IV. CONCLUSION

While the Court is sympathetic to Plaintiff's apparent lack of a remedy for what she believes to be an improper denial of benefits, the law is clear that this Court cannot entertain Plaintiff's case against Coventry. Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment (Clerk's No. 4) is GRANTED. Plaintiff's Motion for Leave to Amend (Clerk's No. 8) is DENIED because amendment would be futile in light of Plaintiff's failure to exhaust administrative remedies[6] and given that Coven-

---

5. Plaintiff makes an additional argument that her failure to exhaust administrative remedies should be excused because "her 120-day deadline for appealing to OPM had expired by the time she retained counsel and decided to sue." Pl.'s Br. at 5. This argument is without merit. Indeed, Plaintiff goes on to state that even if she had requested an extension, she would not have received one because she

could not meet the requirements for an extension. *Id.*

6. Plaintiff is clearly time-barred from pursuing an appeal with OPM at this late date, nearly a year after Coventry reaffirmed its denial of authorization for her gastric bypass surgery. *See* 5 C.F.R. § 890.105(e)(1) (providing time limits ranging from 90–120 days for appeal to OPM). *See Smith v. Heckler,*

try would not be a proper party in any event.

IT IS SO ORDERED

761 F.2d 516, 518 (8th Cir.1985) ("If claimant may avoid the timely exhaustion of remedies requirement, any claimant could belatedly appeal his claim at any time and always obtain district court review ....") (quotations and citations omitted); *see also Gayle v. United Parcel Serv.*, 401 F.3d 222, 226 (4th Cir.2005) (" 'Failure to file a request for review within [a plan's] limitations period is one means by which a claimant may fail to exhaust her administrative remedies.' ") (quoting *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir.2000)).